[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 10, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13445
Non-Argument Calendar
_____

D. C. Docket No. 05-00016-CR-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD DICKERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(April 10, 2007)**

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

A jury convicted appellant of knowingly and intentionally making his

residence available from 1995 through July 2005 for the purpose of distributing drugs in violation of 21 U.S.C. § 856(a)(2), and the district court sentenced him to prison for a term of 170 months. He now appeals, seeking a new trial on the grounds that the district court abused its discretion (1) in precluding him from introducing into evidence payroll records purportedly indicating that he was working at the time an undercover agent said he observed him at his residence during a controlled drug buy, and (2) in limiting his attorney's cross-examination of prosecution witnesses.[1] We find no merit in either ground and therefore affirm.

The evidence of guilt in this case was overwhelming. The evidence – much of it consisting of the testimony of drug traffickers and users – established that throughout the time frame indicated in the indictment, appellant's residence was used to cook crack cocaine and as a place where drug sellers and buyers met to consummate their transactions. On many occasions appellant was present and tacitly, if not explicitly, approved of what was going on.

Appellant was a city firefighter whose working hours were such that he was able to hold several odd jobs on the side: car detailing (which he did in his yard), apartment maintenance, floor waxing and lawn work. His residence was, as police

---

[1] Appellant's attorney objected to the court's action in limiting cross-examination with respect to one witness only, Gantry Habersham. As for the other witnesses, appellant voiced no objection.

officers described it, a "hot spot" for sales of crack cocaine, "a bee-hive of activity," and "one of the hottest locations in town" for drug trafficking. The trafficking spanned at least a decade. One drug user bought crack at appellant's home at least 40 or 50 times from 1994-1997, and a Jamaican drug dealer delivered narcotics to the house on approximately 100 occasions from 2002-2003. Given the frequency of drug dealing at appellant's residence, officers obtained two search warrants and videotaped their execution. The first search occurred in 1995, at eleven o'clock at night, and uncovered crack cocaine, marijuana, drug paraphernalia, a .380 caliber pistol, and cash.[2] Three individuals were arrested, charged with drug offenses, and convicted.[3]

Drug trafficking at appellant's residence abated for a while following this incident, but by 1998, the police had enough concrete evidence of drug dealing there to obtain another search warrant. Executing the warrant, the officers found crack cocaine and various items of drug paraphernalia. They arrested appellant later in the day; he told them that he knew drugs were being dispensed at his home, but that he had no control over it.

---

[2] Appellant was not present when the officers arrived to execute the search warrant. But his children were. They called him at the fire station, and he arrived at the scene a short time later.

[3] Before leaving appellant's residence that evening, a Georgia Bureau of Investigation agent told appellant that his house was "a known drug distribution area," subject to forfeiture, and cautioned him to "take control" of the place.

3

Drug dealing at appellant's residence continued. Drug users testified that when they went to the house to purchase drugs, appellant would call his children or his daughter's boyfriend – so they could handle the deal. If they failed to respond, he would sell the users the crack cocaine they were seeking.

## I.

Appellant's first ground for a new trial is that the court abused its discretion in barring the admission of Pawn City payroll records which, appellant submits, indicated that he was working during the afternoon of July 8, 2004, when, according to a DEA agent's testimony, he was present at his residence while the agent and a confidential informant (CI) were there to purchase two ounces of crack cocaine.[4] The payroll records showed that, on July 8, appellant was paid $65 for unspecified work at one Pawn City location and $25 for cutting grass at another Pawn City location.[5] The court excluded the records in response to the Government's objection that appellant, in waiting until the second day of trial – during the defendant's case – had failed to produce them as required by Federal Rule of Criminal Procedure 16.

---

[4] The agent and (CI) purchased the crack from appellant's daughter's boyfriend, Kerry Lipsey, who cooked it in appellant's kitchen while they waited. Gantry Habersham, a drug dealer (unconnected to the controlled buy), said that appellant was present in the kitchen while Lipsey was cooking the crack.

[5] No one at Pawn City could testify that appellant worked for Pawn City on July 8, and if he did for how long, or was simply paid that day.

The parties had reciprocal discovery obligations under Rule 16. A district court has the authority to remedy a party's failure to comply with the rule's discovery requirements, including barring "that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2)(C). Appellant's attorney offered the court no justifiable reason for his delay in providing the Government with the payroll records. The records were readily available; in fact, counsel had been to Pawn City to retrieve the records yet failed to obtain them and turn them over to the prosecution. Allowing the records to come before the jury would have prejudiced the Government. Although the Government could have asked the court for a recess so it could examine the records and prepare to meet them, the trial was about to conclude – as soon as appellant rested his defense. Under the circumstances at hand, we find no abuse of discretion in the court's refusal to allow the records into evidence.

Even if we were to assume that the court should have allowed the records to come before the jury, we would be hard pressed to hold that the court's ruling prejudiced appellant's substantial rights. As noted above, the evidence of guilt was overwhelming, and the July 8 episode was merely one of many drug transactions that spanned a ten-year period of continuous drug trafficking.

**II.**

5

Appellant complains of the court's limitation of his cross-examination of prosecution witnesses. The cross-examination at issue concerned statements appellant made to police officers regarding his knowledge of the drug trafficking taking place at his residence. As noted in the margin, appellant only objected to the court's limitation of his cross-examination of Gantry Habersham. His attorney cross-examined Habersham about his prior felonies and that his cooperation with the Government led to charges being dropped.[6] On several occasions, the Government objected to counsel's questions – usually because Habersham had either already answered them or was obviously unable to do so – and the court sustained the objections. On the second day of trial, counsel argued that the court should have allowed him further latitude in cross-examining Habersham about the criminal charges that had been lodged against him. In response, the court stated that counsel could recall Habersham to the witness stand for that purpose. For reasons not disclosed by the record, counsel chose not to recall him.

We find no abuse of discretion in the court's handling of appellant's cross-examination of this witness. Counsel was fully able to impeach Habersham's credibility. In the end, in light of the overwhelming evidence of guilt, further cross-examination would have done nothing to avoid an adverse verdict.

_____

[6] The court properly stopped counsel from impeaching Habersham with an inadmissible DEA report.

In sum, we find no lawful reason for granting appellant an new trial.

**AFFIRMED.**